FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 06, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY S.,[1] <br>            Plaintiff, <br><br>   vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>           Defendant. | No. 1:18-cv-03128-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On September 11, 2014, Plaintiff applied for Title XVI supplemental security income benefits, alleging a disability onset date of September 1, 2014. Tr. 143-48. The application was denied initially, Tr. 78-86, and on reconsideration, Tr. 90-96. Plaintiff appeared in person at a hearing before an administrative law judge (ALJ) on March 2, 2017. Tr. 33-53. On May 17, 2017, the ALJ denied Plaintiff's Title XVI claim. Tr. 12-29.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 11, 2014, the application date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: skin abscesses secondary to IV drug abuse and cellulitis, major depressive disorder, anxiety disorder, and heroin use disorder. Tr. 17. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of a listed impairment.  Tr. 17.  The ALJ then concluded that

Plaintiff had the RFC to perform medium work with the following limitations:

> [Plaintiff] can lift and or [sic] carry 50 pounds occasionally and 25 pounds frequently; he can stand and or [sic] walk with normal breaks for 6 hours in an 8-hour workday; he can sit with normal breaks for 6 hours in an 8-hour workday; pushing and pulling unlimited except as indicated for lifting and carrying; he is limited to frequent bilateral overhead upper extremity reaching, otherwise no limitations on handling, fingering, or feeling; he has no vision or communication limitations; he should avoid working around dangerous machinery and unprotected heights; he can understand, remember and carry out simple instructions; he can make judgments commensurate with the functions of unskilled work i.e., work which needs little or no judgment to do simple duties and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed; he can respond appropriately to supervision but should not be required to work in close coordination with coworkers where teamwork is required; he can deal with occasional changes in the work environment; and he can do work that requires no contact with the general public to perform work tasks.

Tr. 18-19.

At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 24.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from a vocational expert, there were other jobs

that existed in significant numbers in the national economy that Plaintiff could

perform, such as industrial cleaner, cook helper, and laundry worker II.  Tr. 24-25.

The ALJ concluded Plaintiff was not under a disability, as defined in the Social

Security Act, since September 11, 2014, the date the application was filed.  Tr. 25.

ORDER - 7

On May 17, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 15 at 1.

## DISCUSSION

### A.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 15 at 14-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[2] SSR 16–3p, 2016 WL 1119029, at *2.

---

[2] At the time of the ALJ's decision in May 2017, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-4p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence]

_____

in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p.

standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 20.

### 1. Lack of Objective Medical Evidence

The ALJ found Plaintiff's physical symptom complaints were not supported by the medical evidence.[3]  Tr. 20-21.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ noted Plaintiff testified to symptoms that caused him to be unable to work, such as a constant need to scratch due to ongoing skin issues and a

_____

[3] Plaintiff does not challenge the ALJ's rejection of his mental symptom complaints.  *See* ECF No. 15 at 2 (arguing that the ALJ "erred by improperly rejecting [Plaintiff's] testimony of disabling physical impairments"); ECF No. 15 at 14 (asserting that the ALJ erroneously rejected Plaintiff's "testimony of severe physical impairments").

need to elevate his legs when sitting due to ankle swelling. Tr. 20, 43-46. Plaintiff asserts that the ALJ's conclusion regarding Plaintiff's symptom claims was not supported by the record. ECF No. 15 at 16. However, despite Plaintiff's testimony that he was unable to work due to a chronic need to scratch, Tr. 42-43, the ALJ found no corresponding complaints in the record. Tr. 21. The ALJ noted that records from February 2015 indicated "slight itching" at an IV site with no pain. Tr. 21 (citing Tr. 723). The ALJ determined that the record showed Plaintiff had a history of active IV drug abuse, his problems with abscesses were secondary to chronic heroin abuse and cellulitis, recent medical records showed only intermittent mild edema, and his physical examinations were primarily benign or within normal limits. Tr. 20-21; *see* Tr. 250-55 (January 2014: Plaintiff presented to the emergency room (ER) with three-day history of abscess of the left shoulder, but on examination he had normal range of motion and strength of the upper and lower extremities, and underwent abscess drainage); Tr. 378-81 (March 2014: Plaintiff presented to the ER with a headache but he had a normal physical examination, reported he was coming down off of heroin but had used heroin that day, and reported he typically had a headache when coming down off of heroin); Tr. 361-63 (May 2014: Plaintiff presented to the ER with a three-day abscess in the right clavicle due to reported heroin use, he reported similar episodes in the past, on examination he had an abscess of the right clavicle and an open wound of the

ORDER - 12

left medial leg, he otherwise had a normal examination, the abscess was drained, and he was discharged in stable condition); Tr. 357 (August 2014: CT scan of Plaintiff's chest showed a prominent subcutaneous abscess in the right shoulder with no involvement of the underlying joint); Tr. 423-26, 519-20 (August-September 2014: Plaintiff underwent incision and drainage/debridement and subsequent drainage of right and left shoulder abscesses); Tr. 760-61, 771 (November 2014: Plaintiff underwent incision and drainage/debridement of a right-sided abdominal wall abscess secondary to possible injection of IV drugs); Tr. 268, 276-77, 286-89, 291-93, 295, 299, 305-16, 359 (Plaintiff continued to present to the ER throughout 2014 with abscesses in various areas of his body secondary to heroin abuse, including his right upper chest, right shoulder, and left shoulder); Tr. 714-17 (July 2015: Plaintiff presented to the ER with an abscess to the left hip, on examination Plaintiff was in no acute distress, he subsequently underwent drainage of the abscess, his symptoms improved, and he was discharged in stable condition); Tr. 859-62 (August 2016: Plaintiff presented with an abscess to the right anterior shoulder after using heroin, he had a steady gait, and he rated his post-drainage pain as a five out of ten); Tr. 848 (August 2016: Plaintiff presented with a rash over the abdomen, thighs, and buttocks, his symptoms were assessed as mild, and he reported that he used heroin and injected in into his left anterior shoulder); Tr. 850-51 (August 2016: Plaintiff was diagnosed with an abscess to the

left groin causing cellulitis to the lower abdomen, he had diffuse cellulitis secondary to heroin abuse, he was in the early stages of sepsis, and he signed out of the hospital against medical advice indicating he would return after he accomplished "all of things I got to get done").

Plaintiff asserts the ALJ erroneously determined that his physical examinations were primarily benign or within normal limits. ECF No. 15 at 16. Plaintiff relies on the same evidence cited by the ALJ to argue that he frequently required treatment, as well as extended hospitalizations, to treat symptoms of infection which were not benign or normal. ECF No. 15 at 16. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical impairment alleged by Plaintiff. Tr. 32-33. The ALJ's finding is supported by substantial evidence.

## 2. Daily Activities

The ALJ found that Plaintiff's daily activities were inconsistent with the level of physical impairment Plaintiff alleged. Tr. 22. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ indicated that Plaintiff testified he was unable to work due to his disabling skin-related impairment and ankle swelling. Tr. 22, 43-46. However, the ALJ noted that Plaintiff remained "quite functional." Tr. 22; *see* Tr. 257 (October 2014: Plaintiff reported that he was able to tend to his activities of daily living including shopping for and preparing food as needed, assisting with cleaning and laundry, and managing his own finances); Tr. 184 (Plaintiff reported no difficulty with personal care including dressing and bathing); Tr. 186, 187 (Plaintiff used

public transportation and talked to his friends on Facebook); Tr. 682 (November 2014: Plaintiff helped his mother move into a mobile home, attended support groups, spent time with peers in recovery, and went to a restaurant with a couple of friends). The ALJ's finding that Plaintiff's daily activities were inconsistent with his specific alleged limitations is supported by substantial evidence. Furthermore, Plaintiff failed to challenge this finding in his opening brief, so argument on this issue is waived. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

### 3. *Treatment Effective in Relieving Symptoms*

The ALJ found that Plaintiff responded to treatment. Tr. 20. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

ORDER - 16

The ALJ noted that Plaintiff testified to symptoms that prevented him from working, such as a constant need to scratch due to ongoing skin issues and a need to elevate his legs when sitting due to ankle swelling. Tr. 20, 43-46. Plaintiff asserts the ALJ "acknowledge[d] that [Plaintiff] 'has problems with abscesses secondary to chronic heroin abuse and cellulitis,' but minimized these complaints" in part because Plaintiff responds to treatment. ECF No. 15 at 16 (citing Tr. 20). However, the ALJ found that treatment was effective at reducing Plaintiff's physical pain symptoms. Tr. 20-21; *see* Tr. 250-55 (January 2014: Plaintiff presented to the ER with three-day history of an abscess of the left shoulder and underwent abscess drainage); Tr. 361-63 (May 2014: Plaintiff presented to the ER with a three-day abscess in the right clavicle due to reported heroin use, he reported similar episodes in the past, he was negative for pain and swelling, the abscess was drained, and he was discharged in stable condition); Tr. 423-26, 519-20 (August-September 2014: Plaintiff underwent incision and drainage/debridement and subsequent drainage of right and left shoulder abscesses); Tr. 760-61, 771 (November 2014: Plaintiff underwent incision and drainage/debridement of right-sided abdominal wall abscess); Tr. 714-17 (July 2015: Plaintiff presented to the ER with an abscess to the left hip, he subsequently underwent drainage of the abscess, his symptoms improved, and he was discharged in stable condition); Tr. 859-62 (August 2016: Plaintiff presented with an abscess

to the right anterior shoulder, and post drainage he rated his pain as a five out of ten); Tr. 850-51 (August 2016: Plaintiff had an abscess to the anterior aspect of the right shoulder and two abscesses to the left groin, he had mild edema to bilateral lower extremities, he was diagnosed with an abscess to the left groin causing cellulitis to the lower abdomen, Plaintiff was in the early stages of sepsis, yet he signed out against medical advice indicating he would return after he accomplished "all of things I got to get done."). Moreover, a doctor at the hospital described Plaintiff as "notoriously noncompliant," noting that Plaintiff had been given a prescription for antibiotics for an abscess but he failed to pick it up or take it. Tr. 830. On this record, the ALJ reasonably concluded that Plaintiff's physical impairments when treated were not as limiting as Plaintiff claimed. This finding is supported by substantial evidence and was a clear and convincing, and unchallenged, reason to discount Plaintiff's symptoms complaints. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

### 4. Poor Work History

The ALJ found that Plaintiff had a poor work history. Tr. 22. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas*, 278 F.3d at 959; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § 416.929(c)(3) (work record can be considered in assessing credibility).

ORDER - 18

In support of this finding, the ALJ noted that Plaintiff had no significant earnings over the course of 15 years. Tr. 22 (citing Tr. 154-155, 157-58). The ALJ also noted that Plaintiff testified he lived with his parents and they have taken care of him. Tr. 22, 37-38. This finding is supported by substantial evidence and this was a clear and convincing, and unchallenged, reason to find Plaintiff's symptom complaints less than credible. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinion of R.A. Cline, Psy.D. ECF No. 15 at 7-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to

the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

In October 2014, R.A. Cline, Psy.D., conducted a psychological evaluation and diagnosed Plaintiff with depressive disorder not otherwise specified, anxiety disorder not otherwise specified with features of panic disorder, and moderate heroin use disorder in early full remission. Tr. 256-60. Dr. Cline opined that Plaintiff 1) had mild difficulty understanding, remembering, and persisting in tasks

by following very short and simple instructions, performing activities within a
schedule, maintaining regular attendance, being punctual within customary
tolerances without special supervision, learning new tasks, performing routine
tasks without special supervision, and adapting to changes in a work setting; 2) had
moderate difficulty understanding, remembering, and persisting in tasks following
detailed instructions, making simple work-related decisions, being aware of normal
hazards and taking appropriate precautions, asking simple questions or requesting
assistance, communicating and performing effectively in a work setting,
maintaining appropriate behavior in a work setting, and setting realistic goals and
planning independently; and 3) had marked difficulty completing a normal
workday and workweek without interruptions from psychologically based
symptoms.  Tr. 258-59.  Dr. Cline opined that Plaintiff would be impaired with
available treatment for a period of six to nine months.  Tr. 259.

The ALJ gave little weight to Dr. Cline's opinion.  Tr. 23.  To the extent that
Dr. Cline's opinion was inconsistent with the nonexamining opinion of Bruce
Eather, Ph.D,[4] Tr. 55-65, the ALJ was required to provide specific and legitimate
reasons for discounting Dr. Cline's opinion.  *See Bayliss*, 427 F.3d at 1216.

---

[4] Dr. Cline's opinion that Plaintiff had marked difficulty completing a normal
workday and workweek without interruptions from psychologically based

*1. Inconsistent with Objective Findings*

The ALJ gave little weight to Dr. Cline's assessment that Plaintiff had marked limitations in the ability to complete a normal workday and workweek, finding that it was inconsistent with his mental status examination. Tr. 23. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Here, the ALJ noted that Dr. Cline assessed entirely mild and moderate limitations in cognitive and social functioning, with the exception of a marked limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 258-59. Moreover, the mental status examination showed Plaintiff had a groomed appearance and cooperative attitude, and the results of his examination were mostly within normal limits. Tr. 259-60. He was able to recall three out of three objects after a delay, perform digit span tasks, and accurately complete serial seven subtractions. Tr. 260. Plaintiff's

_____

symptoms, Tr. 259, conflicts with that of Dr. Eather, who determined that Plaintiff was not disabled. Tr. 55-65.

ORDER - 22

thought process and content, orientation, memory, concentration, and abstract thought were within normal limits.  Tr. 260.  His fund of knowledge and perception were not within normal limits, as Plaintiff could not name the vice president, a current event, or the correct surrounding states, and he reported that he "hears [his] named called and no one is there," and that he "thinks [he] see[s] things out of the peripheral but nothing is there."  Tr. 260.  Further, Plaintiff's Rey test score indicated above average effort and cooperation with the task and decreased the likelihood that he was malingering at that time, his BDI-II test score suggested a current, marked level of depression that had been present over at least the two weeks prior to the examination, and his BAI test score indicated a current, severe level of anxiety.  Tr. 257.  However, Dr. Cline noted that Plaintiff's BAI test score was so high as to often be considered invalid due to over-endorsement of symptoms.  Tr. 257.  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted).  Here, the ALJ reasonably concluded that Dr. Cline's mild and moderate social and cognitive functioning limitations and findings from the mental status examination and objective tests did not support a marked limitation in Plaintiff's ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms.  Tr. 23.

This was a specific, legitimate reason to assign little weight to Dr. Cline's opinion.

### 2. Relied on Plaintiff's Self-Reports

The ALJ also discounted Dr. Cline's opinion because she relied primarily on

Plaintiff's subjective allegations.  Tr. 23.  Relevant factors to evaluating any

medical opinion include the amount of relevant evidence that supports the opinion,

the quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028,

1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A medical

opinion may be rejected by the ALJ if it is conclusory or inadequately supported.

*Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  Further, a physician's opinion

may be rejected if it is based on a claimant's subjective complaints, which were

properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r of Soc.

Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  However,

when an opinion is not more heavily based on a patient's self-reports than on

clinical observations, there is no evidentiary basis for rejecting the opinion.

*Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200.  A clinical interview and

mental status evaluation are objective measures and cannot be discounted as a

"self-report."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Plaintiff argues that it was improper for the ALJ to discount Dr. Cline's opinion based on Plaintiff's self-reports, as Dr. Cline performed a clinical interview and a mental status examination, administered several tests, observed Plaintiff, and diagnosed depression and anxiety. ECF No. 15 at 10. However, as discussed *supra*, Dr. Cline's assessed marked limitation was not consistent with the objective medical evidence. Plaintiff's mental status examination showed findings mostly within normal limits except for Plaintiff's perception and fund of knowledge. Tr. 259-60. Further, Dr. Cline did not review any records. Tr. 23; *see* 20 C.F.R. § 416.927(c)(6) (The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion). Absent reliance on objective medical evidence or Plaintiff's medical records, all that remained as a basis for Dr. Cline's opinion was Plaintiff's self-reports. The ALJ found that Plaintiff's mental health symptom allegations were unreliable, and Plaintiff did not challenge this finding. Moreover, Dr. Cline administered a BAI test and determined that Plaintiff's score was "so high as to often be considered invalid due to overendorsement [sic] of symptoms." Tr. 257.

In light of the ALJ's unchallenged observations about Plaintiff's subjective mental health complaints being inconsistent with Plaintiff's reported limitations, a test score that showed possible exaggeration of symptoms by Plaintiff, the mixed

results of Dr. Cline's mental status examination, and no indication that Dr. Cline

reviewed any records, the ALJ reasonably concluded that Dr. Cline's assessment

that Plaintiff had marked limitations in the ability to complete a normal

workday/workweek without interruptions from psychologically based symptoms

was not supported by her findings and was therefore heavily based on Plaintiff's

self-reports. This is particularly true where Dr. Cline provided no explanation for

this extreme limitation. The ALJ's conclusion is supported by substantial

evidence.

### 3. Does Not Satisfy Disability Durational Requirement

The ALJ also discounted Dr. Cline's assessment because she opined that

Plaintiff would be limited in his ability to work for a six to nine-month period. Tr.

23, 259. Temporary limitations are not enough to meet the durational requirement

for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's

impairment to be expected to last for a continuous period of not less than twelve

months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming

the ALJ's finding that treating physicians' short-term excuse from work was not

indicative of "claimant's long-term functioning"). The ALJ noted that Dr. Cline's

six to nine-month estimation of impairment was inconsistent with disability. Tr.

23. Plaintiff argues that even if Plaintiff's limitations would only last another six

to nine months after Dr. Cline's assessment, that has no bearing on the weight

owed to Dr. Cline's opinion at the time it was rendered. ECF No. 15 at 14.

However, because Dr. Cline indicated that Plaintiff's opined restrictions were not

permanent restrictions or expected to last for a continuous period of not less than

twelve months, the ALJ reasonably discounted Dr. Cline's opinion.

### 4. Social Functioning Improved with Abstinence from Substances

Finally, the ALJ discounted Dr. Cline's opinion because the ALJ found that

the record showed improved social functioning when Plaintiff abstained from

substances. Tr. 23. Social Security claimants may not receive benefits where drug

or alcohol addiction (DAA) is a material contributing factor to disability. *See* 20

C.F.R. § 416.935(b); 42 U.S.C. § 423(d)(2)(c). DAA is a materially contributing

factor if the claimant would not meet the SSA's definition of disability if the

claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). Here, the ALJ

noted that Plaintiff spent time with friends and went to a restaurant, which

demonstrated improved social functioning with abstinence from substances. Tr.

23. Plaintiff asserts that whether he became more socially functional with

abstinence has no bearing on Dr. Cline's assessment that Plaintiff had marked

limitations in his ability to complete a normal workday or workweek because even

if he was fully socially functional, this would not impact his ability to work

without these interruptions. ECF No. 15 at 13. The ALJ fails to explain how being

more socially functional would impact Plaintiff's ability to complete a normal

workday and workweek without disruptions from psychologically based symptoms. Further, as noted by Plaintiff, Dr. Cline explicitly opined that Plaintiff's impairments were not primarily the result of substance use within the past 60 days. Tr. 259. This finding is not supported by substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (recognizing that conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion).

Any error in relying upon this reason is harmless as the ALJ provided other legally sufficient reasons supported by substantial evidence to assign little weight to Dr. Cline's opinion. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the ... error was inconsequential to the ultimate nondisability determination.").

In sum, Plaintiff failed to establish that the ALJ erred in evaluating Dr. Cline's medical opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

ORDER - 28

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 6, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 29